## Louisville & N. R. Co. et al. v. Bordoffsky's Adm'r.

November 28, 1950.

Rehearing denied March 23, 1951.

Roscoe Conklin, Judge.

Edward P. Humphrey for appellants.

Stanley B. Mayer for appellee.

VAN SANT, COMMISSIONER—Affirming.

Appellee, Stanley J. Bordorf, administrator of the estate of Samuel Bordoffsky, filed this action against the Louisville & Nashville and Chesapeake & Ohio Railway Companies to recover damages for the wrongful death of his decedent and for the destruction of his car. Upon the trial the jury found for appellee, awarding him $19,500.00 for the fatal injury and $575.00 for damage to the car. From a judgment on the verdict this appeal has been taken. Appellants urge two grounds for reversal: (1) Error in the instructions to the jury, and (2) the failure to give a peremptory instruction for appellants.

The fatal injury of the decedent arose out of a collision between an east bound C. & O. train and the decedent's automobile at a point where the L. & N. tracks cross Birchwood Avenue near its intersection with Frankfort Avenue in Crescent Hill, Louisville, on October 5, 1945 about 6:30 p. m. The decedent was driving his car south on Birchwood toward Frankfort Avenue, accompanied by his wife and her niece, who were sitting in the back seat of the car. In approaching the crossing he brought his car to a halt north of the electrically operated gates installed to warn of the approach of oncoming trains. At that time the gates were closed for the passing of a west bound L. & N. freight train over the northerly of two railway tracks. After the freight train passed, the gates ascended and the decedent proceeded to cross the tracks. Before he had completed the crossing, the gates descended again and decedent stopped his car just inside the southerly gates, the rear wheels of his car resting across the

rails of the southerly track on which an east bound C. & O. passenger train was approaching. The decedent's wife and his niece alighted from the car on the right or westerly side which was free of danger from the impact. The deceased left the car from the driver's (east) side in the path along which the car was propelled when struck. His lifeless body came to rest approximately fifty feet east of the crossing, while his car was carried beyond.

The gates which protect the crossing are automatically operated in circuit with flasher lights and warning bells. When a train passes over the rails 1650 feet west of the crossing, bells commence ringing and the lights start flashing four seconds later the gates begin to descend and fourteen seconds later they come to rest parallel with the ground. Thus eighteen seconds transpire from the time the train starts the circuit until the gates are closed. The gates are of a type which will swing both inward and outward, and on their inside facing the words, "Push—Gates Will Swing" are painted in letters 2 3/4 inches high. The testimony shows that the train which struck the decedent's car was traveling at approximately forty miles per hour, which was the maximum speed authorized by the railway company. A train traveling at that speed would reach the crossing approximately twenty-eight seconds after striking the circuit which puts into operation the gates and warning devices.

The testimony for both parties and the exhibits filed show that there is a slight curve of approximately two degrees to the right for an east bound train, extending from some distance west of Birchwood between Hite and Bayly Avenues to a point thirty feet east of Birchwood. The testimony also shows that just south of the fence which marks the boundary of the railroad right of way, shrubbery and trees had been planted by the Crescent Hill Woman's Club to beautify the area, the branches and foliage of which extended to some extent into the right of way. The engineer testified that he saw the car on the track when he was from 150 to 200 feet away, and that he did not see the car previously because the curve threw the beam of his headlight off of the track. As soon as he saw the decedent's car, he set the emergency brake, released sand, and closed the throttle.

He travelled 785 feet from that point before coming to a full stop. The engineer had been ringing his bell continuously since leaving East Louisville and had sounded the whistle of his train between Bayly Avenue (one block west of Birchwood) and Hite Avenue (two blocks west of Birchwood) as he passed the freight train travelling on the west bound track.

Deceased, according to his widow's testimony, was accustomed only to gates operated manually by a keeper, and, in an apparent effort to draw attention of such a gate keeper, he blew his horn several times after stopping inside the gates. Mrs. Bordoffsky testified that he got out of the car, but her niece was unable to state whether he got out of the car or not. A policeman and newspaper reporter testified, however, that immediately after the accident both Mrs. Bordoffsky and her niece said that they begged the deceased to leave the car but he refused to do so. The physical facts bear out Mrs. Bordoffsky's testimony since hair matching that of the deceased was discovered on the outer surface of the left rear door near the top hinge.

It is appellants' theory that neither of the railroads was shown to be negligent; but that, even if shown to be negligent, the decedent had the last clear chance to avoid the injury. It is appellee's theory that the L. & N. railroad was negligent in the operation of its gates by trapping the decedent inside the gates and failing to give timely warning of the approach of the train; and, the C. & O. was negligent in operating the train at an unreasonable rate of speed in approaching the crossing in question. Appellee further contends that the decedent was not bound to use the best means at his disposal to avoid injury, but only to use such care and judgment as might be fairly expected of a person of ordinary prudence under the circumstances.

The measured distance between the southerly rail of the track and the southerly gates of the crossing is but nine feet. The distance between the south gates and Frankfort Avenue is approximately 14 feet. Vehicular traffic on Frankfort Avenue is extremely heavy and the approach thereto must be made with extreme caution and at a very slow speed. The rear end of an automobile sixteen feet long necessarily would extend over both rails of the track if a car is brought to rest short of the

south gates. At the speed the train was travelling, the deceased had but ten seconds to discover the gates were down, the train was approaching, and known means of escape were cut off. Thinking the gates were operated by a watchman, he first tried to attract attention by blowing his horn. He could not be expected to look for or take the time to read and digest printed instructions for an otherwise unknown method of escape. He was unacquainted with the peculiar feature of the gate by the use of which he could have escaped. He was trapped, or so he believed, and had to resort to his own ingenuity to attempt to escape. He was confronted with an avenue of dangerous traffic before him and the onrush of a monstrous instrument of death approaching at high speed to his right and rear. He had the legal right to choose what appeared to him to be the safest course to extricate himself from danger, even though he was killed in following the course he chose. The railroad company had invited him into danger by raising the gates and so far as he knew, held him in the place of danger by lowering them. The crossing was inherently dangerous, of which fact the railroad companies could not have been ignorant. It is obvious that it cannot be determined, as a matter of law, that appellee's decedent had the last clear chance to avoid the accident.

The C. & O. had authorized those in charge of the train to proceed at 40 miles per hour. Such speed under such conditions was sufficient evidence to support a verdict based on negligent operation; and the fact that the gates were so geared that their lowering so closely preceded the arrival of the train, which, in turn, so closely followed the open invitation to cross was sufficient evidence to sustain a jury's verdict based on negligence of the L. & N. in operating its gates. The evidence of negligence on the part of both appellants was sufficient to support a verdict of joint liability.

The complaint made of the instructions is that it required the Chesapeake and Ohio Railway Company to keep its train under reasonable control at the time and place of the accident. Appellants argue that this duty would delay the operation of the passenger train to such an extent that much time would be unnecessarily lost. They do not cite any authority for this position other than to say "the law does not require that this be done."

We are of the opinion that the law does require it to be done, although the speed at which a train may be operated reasonably may vary with varying conditions. In Kentucky and Indiana Railway Company v. Cantrell, 298 Ky. 743, 184 S.W.2d 111, virtually the same argument was made in complaining of an instruction in respect to the speed of one of the railway company's trains. The court pointed out that it was not dealing with crossings generally but with the one described in the petition which, as here, was inherently dangerous, and in that case the court observed that the jury reasonably could have concluded that any speed which was so great that the train could not be stopped within 230 feet was evidence of excessive speed and negligence. In the case before us, the engineer admitted that he was traveling at such a speed (40 miles per hour) as to be unable to bring the train to a stop in a distance less than 785 feet.

The cause of action stated in the petition was based on a general allegation of negligence in respect to the construction of the crossing and right of way and the operation of the gates on the part of the L. & N., and upon a general allegation of negligence in respect to the operation of the train by the C. & O. An amended petition was filed withdrawing "all allegations of specific negligence." It is contended that by this amendment the plaintiff withdrew all material allegations of the petition except that in respect to the operation of the train. We believe the original pleading not to be susceptible of the construction placed on it. An allegation charging negligence in the operation of crossing gates is no less general than an allegation charging negligence in the operation of a train, which appellants rightfully concede was not withdrawn by the amended petition.

The judgment is affirmed.